JAMES CROGHAN, APPELLEE, v. CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY, APPELLANT.

FILED SEPTEMBER 22, 1916. No. 18722.

APPEAL from the district court for Douglas county: ALEXANDER C. TROUP, JUDGE. *Affirmed.*

*W. D. McHugh, W. H. Herdman* and *John M. Kelley,* for appellant.

*Mahoney & Kennedy, contra.*

MORRISSEY, C. J.

This is an action growing out of the same wreck discussed in *Maucher v. Chicago, R. I. & P. R. Co., ante,* p.

236.  Plaintiff was an employee of a circus company. He had entered into a contract similar in all respects to the contract made between Maucher and the circus company, and it is agreed by all parties that with the single exception of the amount of recovery the cases are substantially the same, and the ruling in one may stand as the ruling in both.

There was a verdict and judgment for $15,000, and defendant insists that this is grossly excessive.  At the time of the accident plaintiff was 31 years of age, with a life expectancy of more than 33 years.  He had been employed by the circus company but a short time, and for that service was getting $15 a month, with his living furnished.  It is claimed, however, that the opportunity to travel and visit many of the places of interest in the United States was a consideration inducing him to take this employment, and that prior to taking this engagement he had been earning, as a carpenter, $1,200 to $1,500 a year.

There is little dispute as to the serious character of his injuries.  There was an iron rod driven through his knee, his head was cut in several places, his body bruised and lacerated, and his suffering must have been intense. He was confined in the hospital for several weeks, where he was attended by the defendant's surgeon, a man eminent in his profession, who testified as a witness for the plaintiff.  There is also the testimony of other eminent surgeons, and from their testimony we gather that plaintiff's knee is seriously crippled.  He is suffering from atrophy of the muscles of one shoulder.  Dr. Summers, defendant's surgeon at the time of the accident, testified that plaintiff had been under his care from the date of the accident to the date of trial, a period of about six months; that, in addition to the injuries already stated, he was then suffering with a tumor of the left hip.  "He has a tumor in the covering of the bone.  I would say the upper part of the thigh bone just before it enters into the formation

of the hip joint, that part that we call the tuberosity of the femur or thigh bone.  He has a tumor there, the exact nature of which I am not positive about. * * * I think it is a tumor of the periosteum or sarcoma, what is known as sarcoma.  We generally speak of sarcoma as malignant because carcinoma or cancer does not attack the bone.  I believe it is a malignant tumor secondary to the injury of the upper part of the thigh bone." He further testified that he believed this growth to be malignant or cancerous in its nature, and, while he said that he still had hope of saving the leg, yet he made it clear that it might be necessary to remove the leg at the hip joint. "Q. Taking the situation as it is today, Doctor, although you would still try to bring about a beneficial result by treatment other than a removal of the leg, I would like to have you state whether the prospects of succeeding with such treatment are more or less than the prospects of failure?  A. Less.  Q. That is, the probability is less on the side of the treatment being successful than against it?  A. Yes, sir."

This testimony was corroborated by that of other eminent surgeons, from all of which it quite clearly appears that it would probably be necessary to amputate plaintiff's leg at the hip, and even with this heroic treatment the surgeons expressed grave doubt of his ultimate recovery.  In this state of the record, we cannot say that the verdict is excessive, and the judgment is

AFFIRMED.